UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

SANDY C.,[1]                                    )
                                               )
                        Plaintiff,             )
                                               )
            v.                                 )        No. 4:21-cv-00173-KMB-TWP
                                               )
KILOLO KIJAKAZI Acting Commissioner of the    )
Social Security Administration,                )
                                               )
                        Defendant.             )

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Sandy C. initially applied for disability benefits from the Social Security

Administration ("SSA") in January 2015, alleging an onset date of December 29, 2014. [Dkt. 9-5

at 2.] Her application was denied initially and on reconsideration. [Dkt. 9-3 at 11, 22.] Sandy

appeared at a hearing before Administrative Law Judge ("ALJ") Aubri Masterson on March 15,

2017. [Dkt. 9-2 at 45.] ALJ Masterson issued a decision on May 17, 2017, concluding that Sandy

was not entitled to receive disability benefits. [*Id.* at 16.] The Appeals Council denied review on

April 17, 2018. [*Id.* at 2.] Sandy filed a complaint with this court on May 22, 2018, and a joint

motion for remand was subsequently filed and granted. *Combs v. Berryhill*, No. 4:18-cv-00089-

DML-TWP, Dkts. 1, 21, 22 (S.D. Ind. filed May 22, 2018).

Sandy's first remand hearing was held before ALJ Robert Flynn on August 1, 2019, after

which ALJ Flynn issued a partially favorable decision finding that Sandy became disabled on, but

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the
recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States Courts, the Southern District of Indiana has opted to
use only the first names and last initials of non-governmental parties in its Social Security judicial
review opinions.

not before, March 6, 2019.  [Dkt. 9-9 at 25, 70.]  Sandy filed another complaint in this court on December 12, 2019, and the court subsequently entered judgment reversing and remanding Sandy's case.  *Combs v. Saul*, No. 4:19-cv-00268-JMS-DML, Dkts. 1, 16 (S.D. Ind. filed Dec. 12, 2019).

Sandy's second remand hearing was held before ALJ Shelette Veal on July 6, 2021.  [Dkt. 9-16 at 29.]  On July 26, 2021, ALJ Veal issued an unfavorable decision.  [*Id.* at 2.]  Sandy did not file written exceptions and the Appeals Council did not review ALJ Veal's decision on its own motion, and the decision therefore became the final decision of the Commissioner.  20 C.F.R. § 404.984.  Sandy timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.  [Dkt. 1.]  At issue in this appeal is the ALJ's decision denying Sandy benefits from the application date of January 22, 2015 through March 5, 2019.[2]

## I.  STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

---

[2] On March 6, 2019, the day before Sandy turned fifty-five years old, her age category changed to that of advanced age.  [Dkt. 9-9 at 23.]  ALJ Flynn found that on that date, considering Sandy's age, education, work experience, and RFC, no jobs existed in significant numbers in the national economy that Sandy could perform, and accordingly she was to be considered disabled effective that date.  [*Id.* at 25.]  Thus, there is no dispute that Sandy has been disabled since March 6, 2019.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [her] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotation marks and citation omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] . . . ; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work, and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

## II.    BACKGROUND

Sandy was born in 1964 and was fifty years old at the alleged onset of her disability in 2014.[3] [Dkt. 9-5 at 2.] ALJ Veal followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and concluded that Sandy was not disabled. [Dkt. 9-16 at 7-21.] Specifically, ALJ Veal found as follows:

- At Step One, ALJ Veal found that Sandy had not engaged in substantial gainful activity[4] since the date of application. [*Id.* at 7.]

- At Step Two, ALJ Veal determined that Sandy's severe impairments during the relevant period are as follows: cervicalgia, mild lumbar degenerative disc disease, fibromyalgia, complex regional pain syndrome, bilateral knee arthritis, an opioid use disorder, a history of hernia, obstructive sleep apnea, Crohn's disease, plantar fasciitis, obesity, depression, anxiety, and posttraumatic stress disorder. [*Id.*]

- At Step Three, ALJ Veal determined that no listings were met or medically equaled. [*Id.* at 8-11.]

---

[3] The relevant evidence of record is amply set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a), (b).

4

- After Step Three but before Step Four, ALJ Veal found that Sandy had the RFC to "lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours out of an 8-hour day, and sit 6 hours out of an 8-hour day with normal breaks. [Sandy] can frequently climb ramps/stairs and occasionally climb ladders, ropes, or scaffolds. She can frequently balance on level surfaces, stoop, kneel, or crouch. [Sandy] can occasionally crawl. She can frequently handle, finger, or feel with the right upper extremity. [Sandy] must avoid concentrated exposure to moving mechanical parts and unprotected heights. She can perform simple, routine, and repetitive tasks. [Sandy] can maintain sufficient attention and concentration to perform tasks with reasonable pace and persistence. She can have occasional contact with supervisors and coworkers but she can have no contact with the public." [*Id.* at 11-20.]

- At Step Four, ALJ Veal determined that Sandy had no past relevant work. [*Id.* at 20.]

- At Step Five, ALJ Veal determined that between January 22, 2015 (the application date) and March 6, 2019 (the day before Sandy's fifty-fifth birthday), Sandy could have performed the following jobs that existed in significant numbers in the national economy: marker, inspector/hand packager, and small products assembler. [*Id.* at 20-21.] Accordingly, ALJ Veal determined that Sandy was not disabled between January 22, 2015 and March 6, 2019. [*Id.* at 21.]

## III.   DISCUSSION

In seeking judicial review, Sandy contends that ALJ Veal erred in two ways.[5] [Dkt. 11 at 5.] First, ALJ Veal erred at Step Five by determining that Sandy could sustain employment despite the fact that she would have more than occasional interaction with coworkers and supervisors during the probationary period at any occupation that she could otherwise do, after ALJ Veal determined that Sandy was limited to no more than occasional interaction with coworkers and supervisors. [*Id.*] Second, ALJ Veal erred between Steps Three and Four (determining Sandy's RFC) by failing to address whether Sandy would need to elevate her legs while at work. [*Id.*] As the Court finds the first issue to be dispositive, it need not address the second.

---

[5] In her opening brief, Sandy raised an additional argument regarding the ALJ's consideration of the amount of time that Sandy would be off task or absent. [Dkt. 11 at 5, 27-29.] This argument was subsequently withdrawn in her reply. [Dkt. 16 at 17.]

A.      **Probationary Period**

Due to Sandy's difficulty interacting with others, ALJ Veal determined that Sandy could have no more than occasional contact with supervisors and coworkers.  [Dkt. 9-16 at 11.]  At the hearing, the vocational expert ("VE") testified that any of the jobs that a hypothetical person with the abilities and limitations that the ALJ ultimately found were appropriate for Sandy could perform would require a probationary period lasting between thirty and ninety days, and during the first thirty days of this period, an individual would be required to have more than occasional contact with a supervisor or coworker.  [*Id.* at 57-58.]  Accordingly, Sandy argues that because she could have no more than occasional contact with supervisors and coworkers, she would be unable to complete the probationary period and therefore unable to sustain employment.  [Dkt. 11 at 20-27.]  Thus, she contends ALJ Veal committed reversible error.

The Commissioner contends that the "RFC is the individual's *maximum* ability to do sustained work activities in an ordinary work setting on a *regular and continuing* basis," and because the training period was by its nature temporary, it would not occur on a "regular and continuing basis."  [Dkt. 13 at 12-13 (citing SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *2 (emphases in original)).]  The Commissioner accordingly argues that "the VE's testimony that [Sandy] would have more interaction during a short training period was not inconsistent with the ALJ's RFC finding that on a regular and continuing basis [Sandy] should have no more than occasional contact with her supervisors and coworkers."  [*Id.* at 13.]  The Commissioner also argues that Sandy's position would lead to an "untenable" result, requiring an ALJ "to find claimants with a capacity limiting interaction with supervisors to be disabled in every case."  [*Id.*]  Finally, the Commissioner urges the Court to find that the VE took any probationary periods into

consideration when testifying that there were certain jobs that Sandy could perform, and thus ALJ Veal did not err by relying on the VE's testimony.  [*Id.* at 13-14.]

In reply, Sandy disagrees with the Commissioner's contention that she believes the probationary period would last the duration of her employment, but instead argues that "if a worker is unable to fulfill the requirements of a probationary period, she will be unable to sustain work at that job." [Dkt. 16 at 1-2.]

The Seventh Circuit has not yet addressed the effect a probationary period has on a claimant's ability to sustain employment.  Several district courts have considered the issue, however, and held that if a claimant is unable to successfully complete a probationary period, jobs that require completion of the same are unavailable to them.[6]  The Second Circuit has also addressed the issue, and persuasively determined that "the ability to complete a probationary period is [] tantamount to the ability to keep a job, and as multiple circuits have recognized, the ability to keep a job is a necessary prerequisite to the ability to engage in substantial gainful activity."  *Sczepanski v. Saul*, 946 F.3d 152, 159 (2d Cir. 2020) (holding that the ALJ erred in

---

[6] *See, e.g.*, *Melissa A. v. Kijakazi*, No. 1:21-cv-00875-JPH-TAB, 2022 WL 1303404, at *4 (S.D. Ind. Mar. 17, 2022); *Kenneth P. v. Saul*, No. 4:19-cv-0059-JMS-DML, 2019 WL 6463449, at *4-7 (S.D. Ind. Dec. 2, 2019); *Shelton v. Colvin*, No. 1:14-cv-01920-SEB-TAB, 2015 WL 13739358, at *3 (S.D. Ind. Oct. 13, 2015), *adopted by and remanded by* 2016 WL 1253007 (S.D. Ind. Mar. 31, 2016); *Otto v. Saul*, No. 3:20-cv-00060-TPK, 2021 WL 1115351, at *6 (S.D. Ohio Mar. 24, 2021); *Bernard L. v. Saul*, No. 19 CV 1223, 2020 WL 7027637, at *3 (N.D. Ill. Nov. 30, 2020); *Adam C. v. Saul*, No. 19-cv-0023, 2019 WL 6130815, at *3 (N.D. Ill. Nov. 19, 2019); *Potrebic v. Berryhill*, No. 2:17-cv-00462-JVB-APR, 2019 WL 1397477, at *2-4 (N.D. Ind. Mar. 27, 2019). *But see Jacob F. v. Kijakazi*, No. 1:20-cv-02980-DML-JRS, 2022 WL 1284475, at *4 (S.D. Ind. Mar. 30, 2022); *Derrick W. v. Saul*, No. 19-2295, 2020 WL 6135513, at *2 (C.D. Ill. Sept. 14, 2020), *aff'd on other grounds by Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235 (7th Cir. 2021); *Hemby v. Berryhill*, No. 4:15 CV1471 ACL, 2017 WL 951785, at *11-12 (E.D. Mo. Mar. 10, 2017); *Wright v. Comm'r of Soc. Sec.*, No. 1:12CV 1103, 2013 WL 3873947, at *2-3 (N.D. Ohio July 25, 2013).

assuming the claimant's ability to complete a probationary period was irrelevant to her disability status and remanding for further proceedings).

The Court finds *Kenneth P. v. Saul* and its analysis of relevant case law to be instructive. In that case, the ALJ found that the claimant was limited to superficial interaction with coworkers and supervisors. *Kenneth P.*, 2019 WL 6463449, at *3. The VE testified that the claimant could perform certain jobs, but those jobs would all require probationary periods generally lasting between thirty and ninety days. *Id.* During those probationary periods, the intensity "is a little higher than casual," and instruction would be "more detailed than it is superficial." *Id.* The court held that "[i]f [the claimant] cannot have more than superficial contact with coworkers or supervisors, and any job would require an ability to accept instruction consisting of more-than-superficial contact with a supervisor, then it follows that [the claimant] cannot perform any job." *Id.* at *7. Accordingly, the record compelled the conclusion that the claimant had been disabled since her alleged onset date. *Id.*

In this case, ALJ Veal similarly determined that Sandy "can have occasional contact with supervisors and coworkers but she can have no contact with the public." [Dkt. 9-16 at 11.] The VE testified that "any jobs" a hypothetical person with Sandy's limitations could do would have a probationary period between thirty and ninety days. [*Id.* at 57.] When asked whether "for at least the first part of the probationary period at any job . . . the individual [would] have more than occasional interaction with a coworker or supervisor," the VE testified "[d]uring the first 30 days, I would say yes. After that, I would say no." [*Id.* at 57-58.] Because Sandy would be unable to have more than occasional contact with supervisors and coworkers as required during a probationary period for any job she could obtain, she would be unable to sustain her employment. This is true even if the probationary period is by its nature temporary, as the Commissioner argues.

Moreover, the Court declines to infer that the VE "took any probationary periods into consideration when she testified that Plaintiff would be able to perform the listed jobs" as the Commissioner suggests, [dkt. 13 at 14], in light of the contradictory nature of a required probationary period demanding more interaction with supervisors or coworkers than explicitly allowed by the limitations outlined by ALJ Veal.  Accordingly, the record compels the conclusion that Sandy was disabled between January 22, 2015 and March 5, 2019.[7]

### B.    Award of Benefits

Sandy argues that because all relevant factual issues have been resolved and the record requires a finding of disability, the Court should order an award of benefits.  [Dkt. 11 at 26-27.] The Commissioner disagrees, arguing that factual questions remain and therefore remand would be the appropriate remedy should the Court find that ALJ Veal's decision was not supported by substantial evidence.  [Dkt. 13 at 14.]  In reply, Sandy highlights that the VE testified that *any* job the hypothetical individuals posed by ALJ Veal could perform would have a probationary period that would require more than occasional interaction with a coworker or supervisor; accordingly, the question of whether Sandy could be employed in the national economy has been definitively decided.  [Dkt. 16 at 14-16.]

When reviewing the Commissioner's decision, courts have the power to "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings," which "includes the courts' ability to remand with instructions for the Commissioner to calculate and award benefits to the applicant."  *Allord v. Astrue*, 631 F.3d 411,

---

[7] The Court is also not persuaded by the Commissioner's argument that such an outcome would produce an "untenable" result.  [Dkt. 13 at 13.]  The Court "rejects the proposition that it would be 'untenable' to require ALJs to arrive at a finding of disability whenever the claimant's limitations necessitate that finding; indeed, that is the very purpose of the disability inquiry and the only appropriate result."  *Kenneth P.*, 2019 WL 6463449, at *7.

415 (7th Cir. 2011).  "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits."  *Id.*  Such an award of benefits is appropriate when *any* job would require the claimant perform beyond the limitations set forth by the ALJ.  *See Kenneth P.*, 2019 WL 6463449, at *7; *Potrebic*, 2019 WL 1397477, at *3-4; *Otto*, 2021 WL 1115351, at *6-7.

The Court finds that an award of benefits is appropriate in this case.  At the hearing, the VE testified that *any* job a hypothetical individual with Sandy's limitations could perform would typically have a probationary period between thirty and ninety days that would require more than occasional interaction with a coworker or supervisor for the first thirty days.  [Dkt. 9-16 at 57-58.] This is beyond what ALJ Veal determined Sandy could perform.  [*Id.* at 11].  The record thus supports one conclusion—that Sandy qualified for disability benefits between January 22, 2015 and March 5, 2019, and that benefits should be awarded accordingly.

## C.    Other Arguments

Having found that remand is necessary for the reasons detailed above, the Court declines to address Sandy's remaining arguments.

## IV.    CONCLUSION

For the reasons explained above, the Court **REVERSES** the Commissioner's decision denying Sandy benefits from the application date of January 22, 2015 through March 5, 2019 and **REMANDS** this case to the Social Security Administration with instructions to calculate and award benefits for that period.  Final judgment shall issue accordingly.

**SO ORDERED.**

Date: 2/21/2023

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov